**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**TODD SMITH**                                                                          **PETITIONER**
**ADC #156111**

**V.**                               **CASE NO. 5:17-CV-249-KGB-BD**

**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                                   **RESPONDENT**

## RECOMMENDED DISPOSITION

### I.    Procedure for Filing Objections:

This Recommended Disposition ("Recommendation") has been sent to Judge

Kristine G. Baker. Either party to this suit may file written objections with the Clerk of

Court, but to be considered, objections must be received within 14 days of the filing of

this Recommendation. Objections should be specific and should include the factual or

legal basis for the objection.

By not objecting, any right to appeal questions of fact may be jeopardized. And, if

no objections are filed, Judge Baker can adopt this Recommendation without

independently reviewing the record.

### II.   Procedural Background:

A Miller County jury convicted Todd Smith of raping, J.C., his girlfriend's young

daughter, and sentenced him to 40 years in the Arkansas Department of Correction. (#9-

2) Mr. Smith appealed, arguing that the trial court erred when it denied his motion for

directed verdict. *Smith v. State*, 2014 Ark. App. 625, 1. The Arkansas Court of Appeals

1

treated Mr. Smith's appeal as a challenge to the sufficiency of the evidence, found no error, and affirmed. *Id*. at 1-3.

Mr. Smith brought a timely petition for post-conviction relief and an amended petition in the trial court. (#9-5) In the petitions, Mr. Smith raised several claims of ineffective assistance of counsel. (*Id*.) After a hearing, at which several witnesses testified, the court denied relief. (#9-6) Mr. Smith appealed, and the Arkansas Supreme Court affirmed. *Smith v. State*, 2016 Ark. 417, 1.

Mr. Smith raised three claims of ineffective assistance of counsel in his appeal to the Arkansas Supreme Court, which are the same three claims he raises in this habeas petition. He claims that his counsel was ineffective by failing to object to multiple instances in which inadmissible hearsay testimony and testimony about uncharged conduct was elicited by the State; by failing to seek a mistrial when one or more of the jurors was allegedly sleeping during portions of the trial: and by failing to call additional witnesses who could have called into question J.C.'s credibility and the credibility of other witnesses. (#1, #9-7)

**III.    Facts:**

At trial, Deputy Brian Tribble of the Miller County Sheriff's Office testified that he was assigned to investigate the case. He stated that J.C. and her younger sisters, Gr.C. and Ga.C., told a forensic interviewer, Whitney Venable, and her grandmother that Mr. Smith had raped them. (#9-9 at 195-98, 202) After watching Ms. Venable interview J.C., Gr.C. and Ga.C. and after learning that the medical examination of J.C. revealed an injury

to her vaginal area that was consistent with the alleged abuse, Deputy Tribble obtained an arrest warrant for Mr. Smith. (*Id*. at 199-200)

Deputy Tribble testified that he interviewed the girls' mother, Heather Crowell. Ms. Crowell told him that she had no knowledge of any improper conduct. (*Id*. at 200) He further testified that her demeanor was consistent with someone who did not know that her daughters had been raped. (*Id*.) Deputy Tribble also testified, without objection, that Ms. Crowell told him that she and Mr. Smith used methamphetamine together until they passed out. (*Id*. at 201)

Defense counsel, John Stroud, cross-examined Deputy Tribble regarding the truth of the sisters' statements. During cross-examination, Deputy Tribble testified that the girls had also accused their mother of sexually assaulting them (*Id*. at 202-03), and that he believed Ms. Crowell had no knowledge of Mr. Smith's assaults on her children because she was always high.  (*Id*. at 204) Mr. Stroud also elicited testimony from Deputy Tribble that he did not believe the girls' allegations against their mother. (*Id*. at 203-05, 208)

Ms. Crowell testified that Mr. Smith lived with her from November, 2011, to February or March, 2012. (*Id*. at 212) She stated that she had a drug problem at the time, and that she and Mr. Smith used methamphetamine and marijuana. (*Id*. at 213) She stated she did not hear about her daughters' allegations against Mr. Smith until January, 2013, because the girls were not living with her at the time and had not lived with her since May, 2012. (*Id*. at 216-17)

Ms. Crowell testified that there were times when Mr. Smith was alone with her children. (*Id*. at 220) On cross examination, Ms. Crowell stated that she could only recall Mr. Smith picking her girls up on the four-wheeler and taking them to his house a couple of times. (*Id*. at 222, 227, 229-30) Ms. Crowell also testified that she did not know that her children had made any allegations of sexual assault against her, and that she had never sexually assaulted them. (*Id*. at 225-26)

Sexual assault nurse examiner, Odia Russette, testified that she examined J.C., Gr.C., and Ga.C. at the Children's Advocacy Center ("the CAC"). (*Id*. at 249) She stated that her approach to each examination was to make sure that the child was okay and to diagnose and treat them. (*Id*. at 249) Nurse Russette testified that each of the girls, ages 4, 5, and 7 at the time, told her during independent examinations that Mr. Smith had sexually assaulted them (*Id*. at 251-55, 260), and J.C. reported that on one occasion Mr. Smith had put his "private" into her "private" and that blood came out. (*Id*. at 260) Nurse Russette testified that Gr.C. stated that she saw Mr. Smith engage in sexual activity with her two sisters. (*Id*. at 255)  J.C. described seeing him engage in sexual activity with her sisters and with his daughter. (*Id*. at 260) Nurse Russette testified that J.C. had a cleft in her hymen, which indicated it had been torn and healed. (*Id*. at 263-64)

On cross-examination, Nurse Russette acknowledged that the girls used several words that were not typically used by young children; that the girls made allegations about Ms. Crowell and another boyfriend, named Yody; and that the cleft in J.C.'s hymen could have happened naturally or as a result of a traumatic injury. (*Id*. at 266-68, 271-72)

Whitney Venable, a forensic interviewer at the CAC, testified that she interviewed each of Ms. Crowell's daughters individually. (#9-10 at 43) Before Ms. Venable could testify to anything the girls told her, Mr. Stroud objected to the testimony as being hearsay. (*Id.* at 45) The State argued the statements occurred during the course of an investigation, and Ms. Venable was assisting law enforcement. (*Id.*) The State also argued the girls would testify later in the trial, and that the statements were not being offered for the truth of the matter asserted, but rather, to determine whether there was probable cause to charge Mr. Smith. (*Id.*) The court overruled the objection. (*Id.* at 46-47) Mr. Stroud requested a limiting instruction, and the court instructed the jurors that the hearsay statements were not being offered for the truth of the matter asserted, but instead, as a basis for why certain other things were done. (*Id.* at 47-48)

Ms. Venable testified that Gr.C. told her Mr. Smith sexually assaulted her and made similar accusations about another person, but not her mother. (*Id.* at 49-51) She also testified that Gr.C. told her she saw Mr. Smith have sex with J.C. (*Id.* at 51-52)

Ms. Venable stated that, in her interview with J.C., the child told her that Mr. Smith touched her on her private and that his private went into her private and blood came out on the bed. (*Id.* at 58) She said that J.C. stated that she was at Mr. Smith's house in his bedroom and that the bed had sheets with flowers. (*Id.*) Ms. Venable stated that J.C. told her she saw Mr. Smith do the same thing to his daughter that he had done to her. (*Id.* at 64-65)

During cross-examination, Mr. Stroud questioned Ms. Venable about conflicting statements the girls had made to Nurse Russette about allegations against their mother

and "Yody." (*Id*. at 68-71) He also questioned the girls' use of the word sex at such a young age, hinting that someone may have planted that in their minds. (*Id*. at 72-73) At the conclusion of Ms. Venable's testimony, the State moved to admit the video recording of the interviews. Mr. Stroud objected on the same grounds he had objected to Ms. Venable's testimony and requested a limiting instruction. (*Id*. at 82) The State offered the same response offered earlier. (*Id*.) The Court admitted the video recording and gave the same limiting instruction. (*Id*. at 83-84)

Gr.C. and J.C. both testified. Gr.C. testified that she had been molested by both her mother and Mr. Smith, and that she saw Mr. Smith "get on top of" each of her sisters. (*Id*. at 89-101) On cross-examination, Gr.C. testified that family members had talked to her and her sisters about what Mr. Smith had done to them and had told her what to say when she testified. (*Id*. at 105-108)

J.C. testified about Mr. Smith touching her "privates" with his "private" (pointing to the penis of a boy figure diagram) and that she saw blood afterwards. (*Id*. at 119-24) She testified this happened once at Mr. Smith's house on his bed and once at her house. (*Id*. at 123-24) She also testified that she had seen him do this to her sisters and to his daughter. (*Id*. at 129) On cross-examination, J.C. testified that she had talked with relatives and the prosecutors about her testimony. (*Id*. at 133-35) J.C. admitted she never said anything to the DHS investigator about what Mr. Smith had done to her. (*Id*. at 136)

Mr. Smith presented testimony from two witnesses—Amber Hyman, his girlfriend, and himself. Ms. Hyman testified that she lived with Ms. Crowell and the girls beginning in April, 2012. (*Id*. at 150) She testified that Ms. Crowell could not control her

children, that the children lied to Ms. Crowell, and that Ms. Cowell was using drugs at the time. (*Id.* at 151) She testified that Mr. Smith never came to the home when the girls were there, and that the girls never said anything to her about Mr. Smith raping them. (*Id.* at 152, 155) Ms. Hyman also testified that Ms. Crowell told the girls what to say when questioned by a DHS investigator about bruises and bites on J.C.'s legs. (*Id.* at 154-55) She also testified that, at the time, Mr. Smith's stepfather was unable to work, was confined to a wheelchair, and stayed at the house. (*Id.* at 159-60)

Mr. Smith testified that he lived at his parents' house while he was dating Ms. Crowell. (*Id.* at 181) He dated Ms. Crowell from late, 2011, until February, 2012. (*Id.* at 181-82) He testified his stepfather was not working at the time and was at home. (*Id.* at 181, 185) He stated that he was never alone with Ms. Crowell's girls. (*Id.* at 184)

Mr. Smith denied that he had done anything inappropriate with Ms. Crowell's daughters or with his own daughter. He testified that he believed that the girls' allegations arose from Ms. Crowell's anger with him for breaking up with her. (*Id.* 185-87) He stated that had ended his relationship with Ms. Crowell because of her methamphetamine use and that, when he started dating Ms. Hyman, Ms. Crowell called him and sent him threatening texts. (*Id.* at 183) On cross-examination, Mr. Smith admitted using methamphetamine and marijuana and, on one occasion, using methamphetamine with Ms. Crowell. (*Id.* at 199)

IV.    **Discussion**:

A.    **Standard**

A federal habeas petitioner who challenges a matter adjudicated by a state court on the merits must show that the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To decide whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact, this Court must "train its attention on the particular reasons—both legal and factual—why state courts rejected the state prisoner's federal claims." *Wilson v. Sellers*, __U.S. __, __, 138 S.Ct. 1188, 1191-92 (2018) (quoting *Hittson v. Chatman*, 576 U.S. __, __, 135 S.Ct. 2126, 2126, 1 (2015)). The Court must also give appropriate deference to the state court's decision. *Id*. (citing *Harrington v. Richter*, 562 U.S. 86, 101–102 (2011)).

As used in the statute, "contrary to" and "unreasonable application" have "independent meaning." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). The "contrary to" clause "suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id*. (defining "contrary" as "diametrically different," "opposite in character or nature," or "mutually opposed"). "An 'unreasonable application' of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context."

*Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016), *cert. denied,* 137 S. Ct. 821 (2017) (citing *Williams*, 529 U.S. at 407).

Here, Mr. Smith claims that his counsel was constitutionally ineffective. The Arkansas Supreme Court applied *Strickland v. Washington*, 466 U.S. 668 (1984), the relevant Supreme Court precedent, to analyze whether Mr. Smith's counsel was unconstitutionally ineffective. *Smith v. State*, 2016 Ark. 417, 2-3. The court noted that Mr. Smith had the burden to establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense to the extent that he was denied a fair trial. *Id*. at 3 (citing *Strickland*). The Arkansas Supreme Court's decision was not contrary to relevant Supreme Court precedent.

The question here is whether the Arkansas Supreme Court unreasonably applied federal law or unreasonably determined the facts of Mr. Smith's case when it denied his claims of ineffective assistance of counsel.

### B.    Counsel's Failure to Object to Testimony

Mr. Smith argues that his counsel was ineffective for failing to object to hearsay testimony from Deputy Tribble, Nurse Russette, and Ms. Venable regarding statements that the three girls had made. The trial court found, after holding a hearing on Mr. Smith's rule 37 petition, that all of the elicited testimony either fell within a hearsay exception; was cumulative; was not so prejudicial as to undermine the verdict; or was part of trial counsel's deliberate strategy. (#9-6 at 3-5) *Smith*, 2016 Ark. at 3-4. The Arkansas Supreme Court agreed. *Id*. at 4-7.

Mr. Smith claims Mr. Stroud should have objected to Deputy Tribble's testimony that the girls made allegations that Mr. Smith had sexually abused Gr.C. and Ga.C. and that they had been sexually abused by Ms. Crowell.  (#1 at 6) During the Rule 37 hearing, Mr. Stroud testified that he did not object to the testimony because he believed the testimony was inconsistent with other statements made by the girls, and, therefore, that the testimony was helpful to the defense. The trial court held that Mr. Stroud's decision not to object was a matter of trial strategy.

The Arkansas Supreme Court agreed with the trial court that Mr. Stroud's decision not to object to the hearsay testimony was a matter of trial strategy. *Id*. at 4-5. The Arkansas Supreme Court's decision was not an unreasonable application of the law or determination of the facts.

At the Rule 37 hearing, Mr. Stroud also testified that a big part of his defense strategy was to demonstrate that the girls had been "coached up" by Ms. Crowell and that she had "put them up to" making accusations against Mr. Smith. (#9-11 at 54-55, 58-59, 67, 68) Accordingly, Mr. Stroud believed that it was to Mr. Smith's advantage to allow Deputy Tribble to testify so that Mr. Stroud could point out inconsistencies in the girls' statements.

Further, Mr. Stroud testified that he believed that it helped the defense to point out that Deputy Tribble did not believe the allegations the girls made against their mother and Yody enough to bring charges against them. Mr. Stroud testified: "In my opinion the fact that allegations are made that are not acted upon favored the defendant because the state does not take any action on it . . . . Well, in my opinion the detective testified that he

10

didn't give any credence to that outweighed any prejudice that those statements would have been made." (*Id*. at 52)

Additionally, Mr. Stroud testified that he believed that the inconsistent statements the girls made about their mother and Yody molesting them would work to discredit their testimony. (*Id*. at 80, 83) Matters of trial tactics and strategy are not grounds for post-conviction relief on claims of ineffective assistance of counsel. *Feuget v. State*, 2015 Ark. 43, 7 (citing *Rankin v. State,* 365 Ark. 255, 258 (2006)) see also *Guzman-Ortiz v. United States*, 849 F.3d 708, 714 (8th Cir. 2017), *cert. denied,* No. 17-8356, 2018 WL 2186274 (U.S. May 14, 2018) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The choice to focus on 'some issues to the exclusion of others' carries with it 'a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect'").

The Arkansas Supreme Court found that Nurse Russette's testimony fell within the hearsay exception for testimony made for medical diagnosis or treatment. *Smith*, 2016 Ark. at 4 (citing ARK. R. EVID. 803(4)); see also FED. R. EVID. 803(4). The court reasoned that the statements the children made to Nurse Russette were relevant to their physical and psychological diagnoses and treatment. *Id*. (citing *Hawkins v. State*, 348 Ark. 384 (2002)). The court's decision was not contrary to federal law or an unreasonable determination of the facts. *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985) (statements by a child-abuse victim to an examining physician identifying her abuser as a member of her household were pertinent to treatment in order for FED. R. EVID. 803(4) to apply).

Additionally, as the court points out, much of the hearsay testimony regarding Mr. Smith's sexual contact with minors other than J.C. was cumulative because J.C. and Gr.C both testified that Mr. Smith had molested them and their sisters. *Bobby v. Van Hook*, 558 U.S. 4, 12 (2009) (there is no prejudice from an attorney's failure to present cumulative evidence); see also *Forrest v. Steele*, 764 F.3d 848, 859 (8th Cir. 2014) (same).

Hearsay testimony regarding Mr. Smith's drug use was also cumulative because Ms. Crowell testified that Mr. Smith used methamphetamine and marijuana and that Mr. Smith had admitted using drugs during the time the rape occurred. (#9-9 at 213, #9-10 at 199)

Mr. Smith also complains that his counsel did not object to Ms. Venable's testimony that J.C. had witnessed Mr. Smith molesting her younger sisters and his daughter.[1] The Arkansas Supreme Court held that Mr. Stroud was not ineffective for failing to object to the testimony because it fell within the "pedophile exception" to Rule 404(b) of the Arkansas Rules of Evidence. *Smith*, 2016 Ark. at 6-7.

Under the pedophile exception, evidence of similar acts with the same or other children is allowed to show a proclivity for a specific act with a person or class of persons with whom the defendant had an intimate relationship. *Id.* at 6 (citing *Hendrix v. State*, 2011 Ark. 122; *Flanery v. State*, 362 Ark. 311 (2005)). In order for the exception to apply there must be a sufficient degree of similarity between the evidence to be

---

[1] Mr. Smith was never charged with an offense related to Ga.C., Gr.C. or his daughter.

introduced and the conduct of the defendant and there must be an intimate relationship between the perpetrator and the victim of the prior act. *Id*.

Mr. Smith points to *Hanlin v. State*, 356 Ark. 516 (2004) to argue that the pedophile exception does not apply to J.C.'s testimony that he molested his own daughter because there is no proof that Mr. Smith's daughter was in the same household as Mr. Smith at the time the alleged abuse occurred. The Arkansas Supreme Court, however, rejected this same argument in *Parish v. State*, 357 Ark. 260, 270 (2004).

In *Parish*, the court noted that an "intimate relationship," for purposes of applying the pedophile exception, does not necessarily require that the child live in the home of the accused. *Id.* The court defined an "intimate relationship" as close in friendship or acquaintance, familiar, near, or confidential. *Id.* (*citing Black's Law Dictionary* 821 (6th ed.1990)). The court further noted that, applying the pedophile exception, it had admitted the testimony of a child living in the same household or staying as an overnight guest in the perpetrator's home, as well as against a perpetrator who babysat or gained access to the child. *Id*. (other citations omitted).

Here, Ms. Hyman testified that both Mr. Smith and his daughter lived with his parents at the time of the alleged abuse. (#9-10 at 158, 181) She also testified that Mr. Smith had custody of his daughter. (*Id*. at 160) Even if Mr. Smith was not in the same household as his daughter when the abuse occurred, he was in an intimate relationship with his daughter, and the pedophile exception applied. It was not unreasonable, therefore, for the Arkansas Supreme Court to conclude that Mr. Smith's counsel was not

constitutionally ineffective for failing object. *Parish v. State*, 357 Ark. 260, 270–71 (2004).

Finally, Mr. Smith points to *Perez v. State*, 2016 Ark. App. 54, for the proposition that his counsel should not have admitted into evidence the recording of Ms. Venable's interviews with the children. In *Perez*, defense counsel cross-examined the victim and asked about inconsistencies between her testimony and statements made in a forensic interview. The Court of Appeals found that the admission of the entire forensic interview constituted an abuse of discretion because it contained hearsay to which no exceptions applied.

Here, as established above, the statements at issue were either not hearsay, fell under a hearsay exception, or were properly deemed cumulative to other, properly admitted testimony. Additionally, counsel's strategy was to use the contradictory statements to undermine J.C.'s credibility and to obtain a limiting instruction. (#9-10 a 46-47, 82-84) Also, here there was physical evidence consistent with the alleged assault, but in *Perez* there was not any physical evidence. *Id.* at 7.

Even if Mr. Smith could establish deficient performance, he has not shown a reasonable probability that, but for counsel's unprofessional errors, there was a substantial likelihood of a different result. *Strickland*, 466 U.S. at 694; *Slocum*, 854 F.3d 524, 532 (2017) (citing *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). The testimony Mr. Smith contends his attorney should have objected to was either admissible or cumulative. Counsel's failure

to object did not result in prejudice to Mr. Smith because objections would have been futile.

Further, here there was substantial evidence from which the jury could have found Mr. Smith guilty. J.C. testified that Mr. Smith raped her, and there was corroborating testimony from her sister, Gr.C. Further, there was testimony from Deputy Tribble, Nurse Russette, and Ms. Venable that J.C. identified Mr. Smith as the perpetrator. Finally, there was physical evidence of trauma to J.C. that was consistent with abuse.

The Arkansas Supreme Court's rejection of Mr. Smith's claim was not an unreasonable determination of the facts or an unreasonable application of the *Strickland* standard.

### C.      Counsel's Failure to Object to a Sleeping Juror

Mr. Smith claims his counsel was ineffective for failing to object and seek a mistrial when one or more of the jurors in the case fell asleep during portions of the trial. (#1 at 11) The circuit court observed that the parties presented conflicting testimony on this point at the Rule 37 hearing. Mr. Stroud testified that he had no "independent recollection" that Mr. Smith had mentioned to him that one of the jurors was sleeping. (#9-11 at 70) Mr. Stroud further testified that if he had been told that a juror was sleeping, a motion for mistrial would have been appropriate, but he did not recall being told of a sleeping juror. (*Id.*)

In contrast, Mr. Smith's mother, Sarah Jones, testified that Mr. Smith had mentioned the sleeping juror to Mr. Stroud "several times" during the trial, and that "we" mentioned the sleeping juror to him "in his office" after the trial. (*Id.* at 116-17) Mr.

15

Smith did not testify at the Rule 37 hearing to corroborate Ms. Jones's testimony that he had mentioned it to Mr. Stroud during the trial.

In denying the Rule 37 petition on this ground, the trial court noted that Mr. Smith had not come forward with a juror chart indicating which juror was allegedly sleeping or any affidavits or testimony of independent third parties to substantiate his claim that a juror was asleep during any portion of the trial. (#9-6 at 7) The court also observed that it would have been difficult for a sleeping jury to have gone undetected by the court, the attorneys, and court security officers. (*Id.*)

The trial court went on to hold that, even if a juror had been sleeping, Mr. Smith had not come forward with sufficient evidence of prejudice. (#9-6 at 7) Mr. Smith did not point to any particular moment in the trial when a juror allegedly slept; nor did he state how the alleged sleeping juror impaired his ability to receive a fair trial. (*Id.*)

The Arkansas Supreme Court addressed the claim, deferred to the trial court's credibility determination, and affirmed. *Smith*, 2016 Ark. at 8. The court's decision was neither an unreasonable application of federal law nor an unreasonable determination of the facts. See *United States v. Tierney*, 947 F.2d 854, 868–69 (8th Cir. 1991) (vague assertion that the jury was inattentive during critical parts of the trial was not sufficient to establish prejudice sufficient to require a mistrial) (citing *Tanner v. U.S.*, 483 U.S. 107, 125 (1987)); see also *Smith v. Roper*, No. 4:08CV1529MLM, 2009 WL 2182153, at 31 (E.D. Mo. 2009) (affirming Missouri appellate court's rejection of ineffective-assistance on the ground petitioner made only a general assertion and did not establish how he had been prejudiced by a juror's sleeping).

16

Mr. Smith claims his case is analogous to *Dimas-Martinez v. State*, 2011 Ark. 515, where the Arkansas Court reversed a conviction because of a sleeping juror. (#1 at 11) The facts in *Dimas-Martinez* are distinguishable from those in Mr. Smith's case.

Mr. Dimas-Martinez's counsel notified the court, during the trial, that she had noticed a juror sleeping through some technical testimony and requested he be removed. *Dimas-Martinez*, 2011 Ark. at 8. The court called the juror into chambers and confronted him about sleeping through testimony. He stated he had not missed much. *Id*. at 9. The court twice denied counsel's request that the juror be removed. *Id*.

In that case, the Arkansas Supreme Court held that the trial court had abused its discretion by not removing the juror, and remanded the case. *Id*. at 11. Unlike Mr. Smith's case, the issue in *Dimas-Martiez* was juror misconduct and not an ineffective assistance of counsel. In *Dimas-Martinez*, counsel was aware of the sleeping juror and objected at trial. Here, by contrast, there is no clear evidence that Mr. Smith made his counsel aware of a sleeping juror. Mr. Smith did not testify to discussing a sleeping juror with counsel during the trial. Further, in the pending petition Mr. Smith has not offered any specifics about who the sleeping juror was, how long the juror slept, or what part of the trial the juror allegedly missed while sleeping. Under these circumstances, the Arkansas Supreme Court's determination that counsel was not ineffective for failing to object to or seek a mistrial because of a still-unidentified sleeping juror was not contrary to federal law or an unreasonable determination of the facts.

### D.    Counsel's Failure to Address the Credibility of the Witnesses

Finally, Mr. Smith contends that his counsel was ineffective for failing to question the credibility of the witnesses or highlight inconsistencies in their testimony. (#1 at 13) More specifically, Mr. Smith claims that counsel should have called Ms. Jones and her husband, Jimmy Upton, to testify that there was never a time when the girls were at their home; that Mr. Upton was disabled at the time and never left the house; and that they did not have sheets with flowers so as to contradict J.C.'s description of the sheets. (#1 at 13) Additionally, Mr. Smith claims that counsel should have called Dennis Gardner, Kim Mills, and Stanley Scoggins to testify that the girls enjoyed a good relationship with Mr. Smith and showed no signs of abuse. (*Id*. at 13-14)

In discussing this claim in the order denying Mr. Smith's Rule 37 petition, the trial court again recognized that there was conflicting testimony between Mr. Stroud and Ms. Jones and Mr. Upton. (#9-6 at 9-11) Mr. Stroud testified that he asked Ms. Jones and Mr. Upton to have potential witnesses contact him, and they testified that they provided the names and contact information of potential witnesses to Mr. Stroud.

Potential witnesses Dennis Gardner, Kim Mills, and Stanley Scoggins testified at the Rule 37 hearing that they had been in the home where Mr. Smith only once; that their observation of contact between Mr. Smith and the victim were limited, but that they had observed no improper activity. They also testified that Mr. Smith had never asked them to contact Mr. Stroud or to testify on his behalf.[2]

---

[2] Mr. Gardner, Mr. Mills, and Mr. Scoggins were not asked whether they were ever contacted by Mr. Stroud.

The trial court held that the testimony offered at the hearing did not support the allegation that Mr. Stroud was informed of the names and contact information of potential witnesses and chose to ignore the information. (#9-6 at 9)  The court pointed to the following exchange that took place on the record after the close of the State's case-in-chief:

> MR. STROUD: And as we are going forward, our witnesses to be called will be you and Amber. Are you satisfied with us presenting those two witnesses in your defense?
>
> THE DEFENDANT: Yes. Can we add another witness?
>
> MR. STROUD: Who would that be?
>
> THE DEFENDANT: My dad.
>
> MR. STROUD: And what would your dad testify to?
>
> THE DEFENDANT: That he was at the house the whole time. He was off work or at home the whole year and the whole time I was with Heather. In the small trailer house if there was anything like that he would obviously have known.
>
> MR. STROUD: Well, he wasn't made known to me as a witness before. We will have to talk to the prosecutors about that, okay.

(#9-10 at 144).

***

> MR. STROUD: Your Honor, just for the record, talked to the prosecutors. They would oppose Todd's stepfather testifying. He has been present in the courtroom during the trial. But, Todd, you realize you can during your examination testify to those facts.
>
> THE DEFENDANT: Yes, sir.
>
> MR. STROUD: And you're satisfied proceeding in that manner?

THE DEFENDANT: Yes, sir.

MR. STROUD: That's all I have, Your Honor.

THE COURT: And just a few moments ago it appeared to me, was the first time that you said that you were going to ask your father or stepfather to testify?

THE DEFENDANT: Yes, sir.

THE COURT: You hadn't discussed that with Mr. Stroud before.

THE DEFENDANT: No, sir.

(#9-10 at 145-46)

The Arkansas Supreme Court addressed this claim, deferred to the trial court's credibility determination, and affirmed its holding that counsel's performance was not ineffective. *Smith*, 2016 Ark. at 8-9. The Arkansas Supreme Court's decision was not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence.

Mr. Mills and Mr. Scoggins were friends with Ms. Jones and Mr. Upton and acquaintances of Mr. Smith's. Mr. Gardner was Mr. Smith's employer, and his observations of Mr. Smith with the children were limited. (#9-11 at 39-44, 89-93, 95-99) Mr. Stroud's failure to call these witnesses did not prejudice Mr. Smith because their testimony would not have led to a different outcome given their limited contact with J.C. and other evidence supporting Mr. Smith's conviction, including, J.C.'s testimony, corroborating testimony of other witnesses, and physical evidence consistent with injury.

Additionally, the failure to call Ms. Jones and Mr. Upton did not prejudice Mr. Smith because, even if they had testified that Mr. Upton was disabled and was always at

the house where J.C. claimed one rape occurred, the testimony would have been cumulative. Mr. Smith and Ms. Crowell both testified to Mr. Upton's disability and his inability to leave the house during the relevant time. (#9-10 at 159, 181-82, 185) Mr. Smith was not prejudiced by his counsel's failure to present cumulative testimony.

Mr. Smith also claims that Ms. Jones and Mr. Upton could have testified that they did not have bedding with flowers, thus contradicting J.C.'s testimony about flowered sheets. (#9-11 at 71-73) Mr. Stroud testified that he could not recall anyone informing him that there were no flowered sheets in the Jones/Upton house. Further, there was evidence from which the jury could have found that Mr. Smith raped J.C. at her own home, rather than at his parents' home. (#9-10 at 121-23)

The Arkansas Supreme Court properly deferred to the trial court's credibility determination, and its decision was not an unreasonable application of federal law.

**V.    Certificate of Appealability:**

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Smith has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c) (1)-(2). In this case, Mr. Smith has not provided a basis for the Court to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

**VI.    Conclusion:**

The Arkansas Supreme Court's decision to deny Mr. Smith relief on his ineffective assistance of counsel claims was neither an unreasonable application of

federal law nor an unreasonable determination of facts in light of the evidence presented at trial and at the Rule 37 hearing. The Court should deny Mr. Smith's claims.

DATED this 22nd day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE